U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2019 JUN 18 AM 9: 49
CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| FREDRIC OESCHGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:19-cv-41 |
| | ) | |
| GENETHERA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO RECONSIDER
**(Doc. 33)**

Defendant GeneThera, Inc. ("GeneThera") has filed an "Omnibus" brief (Doc. 33) in response to the court's April 24, 2019 Order (Doc. 32) denying in part GeneThera's Motion to Dismiss (Doc. 8) and denying GeneThera's Motion to Dissolve (Doc. 19) a temporary restraining order (TRO) that the court entered on April 11, 2019 (Doc. 16). The April 24, 2019 Order extended the TRO until July 24, 2019 to allow the parties to conduct jurisdictional discovery. (*See* Doc. 32 at 14.) In an Order dated May 16, 2019, the court ruled on the portion of the Omnibus brief seeking to shorten the effective period of the TRO and to impose a security bond. (Doc. 37.) The court reserved ruling on the remaining issue in the Omnibus brief: GeneThera's motion to reconsider the April 24, 2019 Order. Briefing on that issue is now complete, and the court addresses it here.

## **Background**

The court recited the following background in its April 24, 2019 Order. GeneThera and FOGT entered into a "Milestones Investment Agreement" ("MIA") on March 1, 2018. (Doc. 8-4 at 3.) Mr. Oeschger's signature appears on the agreement as "Manager" of FOGT. (*Id.* at 10.) In a provision regarding the "governing law," the MIA states, in pertinent part: "The parties

hereto hereby submit to the exclusive jurisdiction of the United States federal courts located in Denver, Colorado with respect to any dispute arising under this agreement . . . ." (*Id.* at 6.)

The agreement also includes the following provision: "Any claim or controversy arising out of or relating to the performance of this Agreement, which has not been settled by mediation, shall be settled by arbitration in Denver, Colorado, in accordance with the Commercial Arbitration Rules of the American Arbitration Association [AAA], as herein amended." (*Id.* at 9.) The relevant AAA arbitration rules include the following provisions:

R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7 (amended and effective Oct. 1, 2013).

On or about February 19, 2019, GeneThera filed a demand against FOGT for arbitration in Colorado with the AAA. (*See* Doc. 8-1 ¶ 9.) In an order entered on March 8, 2019, an emergency arbitrator found that GeneThera had a reasonable probability of success on its contract claim. (Doc. 8-13 at 3.) The emergency arbitrator found that GeneThera had presented undisputed evidence that FOGT had refused to make a $1.2 million payment under the MIA, and that GeneThera was accordingly unable to pay $25,186.50 in rent under a lease. (*See id.* at 3–4.) The emergency arbitrator found that if FOGT "is not held to its obligations under the MIA, Claimant will become insolvent and be forced to close its doors, resulting in catastrophic loss that cannot be remedied by money alone." (*Id.*) The emergency arbitrator enjoined FOGT from

2

breaching the MIA and ordered it to immediately pay $25,186.50 to GeneThera so that GeneThera could satisfy its rent obligations. (*Id.* at 4.)

GeneThera submitted a First Amended Demand for Arbitration to the AAA on or about March 12, 2019. (Doc. 8-14.) The demand named FOGT as the sole respondent. The First Amended Demand added a new claim for "Piercing the Corporate Veil / Alter Ego," alleging that FOGT is the alter ego of Mr. Oeschger and asserting that Mr. Oeschger is personally liable for GeneThera's alleged damages. (*Id.* at 9–10.)

FOGT filed for bankruptcy under Chapter 7 on March 15, 2019. (*See* Doc. 8-16 at 3.) Mr. Oeschger filed his complaint in the district court on March 18, 2019. (Doc. 1.) Then, in the bankruptcy action, GeneThera filed an emergency motion for relief from the automatic stay on March 22, 2019. (Doc. 8-16 at 1.) GeneThera submitted a Second Amended Demand for Arbitration to the AAA on or about March 22, 2019. (Doc. 8-15.) The Second Amended Demand was "to add Respondent Fred Oeschger as a captioned party and to clarify Claimant's claims against Respondent Fred Oeschger individually." (*Id.* at 2.) In an order dated April 5, 2019, the Bankruptcy Court granted GeneThera relief from the automatic stay so that it could pursue its claims in the Colorado arbitration. (Doc. 8-18 at 2.)

Having been granted relief from the automatic stay, GeneThera returned to the arbitration and requested emergency injunctive relief against Mr. Oeschger. (*See* Doc. 14-3 at 2.) In an order dated April 9, 2019, the emergency arbitrator found as follows:

> In light of Mr. Oeschger's control of FOGT, its thin capitalization, its representations to Claimant that it had the resources to meet its obligations to Claimant, Mr. Oeschger's knowledge of those representations, and financial transactions in which the interests of Mr. Oeschger and FOGT were not kept separate, the Arbitrator concludes that Claimant has a reasonable probability of success on the merits of its alter ego claims against Mr. Oeschger.

(Doc. 14-3 at 2–3.) The arbitrator accordingly amended the March 8, 2019 order "to include Fred Oeschger as a Respondent" and ordered that Mr. Oeschger "immediately pay $25,186.50 to Claimant so that Claimant may satisfy its rent obligations under the Lease." (*Id.* at 3.)

**Procedural History**

Mr. Oeschger filed his complaint against GeneThera in this court on March 18, 2019, seeking the following declaration:

> (i) that he is not liable to GeneThera or its shareholders for any actions or failures to act in the capacity of a member of the Board of Directors of GeneThera, and
> (ii) that he is not personally liable on obligations, if any, owed by FOGT, LLC to GeneThera, or otherwise.

(Doc. 7 ¶ 5.) Mr. Oeschger also seeks "preliminary and permanent injunctive relief precluding GeneThera from taking actions to compel him to arbitrate in the Arbitration any of the claims that are the subject of this judicial action." (*Id.*)

The court held a hearing on April 9, 2019 and ordered expedited briefing on three recently filed motions: Mr. Oeschger's April 2, 2019 motion for a preliminary injunction staying the Arbitration (Doc. 4); GeneThera's April 8, 2019 motion to dismiss for lack of subject matter and personal jurisdiction, motion to transfer, or motion to stay (Doc. 8); and GeneThera's April 8, 2019 emergency motion to stay and vacate the hearing (Doc. 9). Mr. Oeschger filed a motion for a temporary restraining order (TRO) on April 10, 2019. (Doc. 14.) The court granted that latter motion on April 11, 2019 and entered a TRO enjoining GeneThera from taking any action in furtherance of the prosecution of the Arbitration or enforcing the emergency arbitrator's April 10, 2019 order compelling Mr. Oeschger to arbitrate the claims against him and to make an immediate payment of $25,186.50 to GeneThera. (Doc. 16.) The TRO was initially set to expire on April 25, 2019. (*Id.* at 2.)

4

GeneThera filed a motion to dissolve the TRO on April 12, 2019. (Doc. 19.) On April 17, 2019, the parties completed expedited briefing on Mr. Oeschger's motion for a preliminary injunction (Doc. 4), GeneThera's motion to dismiss (Doc. 8), and GeneThera's emergency motion to stay and vacate (Doc. 9). Mr. Oeschger filed a motion for limited jurisdictional discovery and a motion for extension of the TRO on April 18, 2019. (Doc. 27.)

On April 24, 2019, the day before the TRO was set to expire, the court issued its Order addressing (I) the emergency motion to stay (Doc. 9), (II) the portion of GeneThera's motion to dismiss for lack of subject matter jurisdiction (Doc. 8), and (III) the issues of personal jurisdiction and related questions of dissolving or extending the TRO raised in Docs. 8, 19, and 27. (*See* Doc. 32.) The emergency motion to stay was moot. (*Id.* at 5.) The court denied GeneThera's motion to dismiss insofar as it sought dismissal for lack of subject matter jurisdiction. The court reasoned that, when a signatory to an agreement delegating issues of arbitrability to an arbitrator seeks to compel a non-signatory to arbitrate arbitrability, "it is the court—not the arbitrators—who resolve the issue of arbitrability." (*Id.* at 8.) The court further found no obstacle to Mr. Oeschger's standing to pursue his declaratory claims. (*Id.* at 12.) Finally, the court ordered jurisdictional discovery to answer the question of personal jurisdiction and extended the TRO to allow time to complete that discovery. (*Id.* at 13.)

## Analysis

GeneThera filed its motion to reconsider the April 24, 2019 Order on May 1, 2019. (Doc. 33.) GeneThera asserts that, before entering injunctive relief, the court must find a "clear showing" that Mr. Oeschger has a "reasonable probability of success" regarding (1) subject matter jurisdiction, (2) personal jurisdiction and venue, and (3) on the merits regarding personal liability for FOGT's breach of the MIA and fraud. (*Id.* at 4–9.) GeneThera further asserts that it

5

was deprived of a reasonable opportunity to be heard, "including but not limited to a hearing 'at the earliest possible time.'" (*Id.* at 9 (quoting Fed. R. Civ. P. 65(b)(3)).) Finally, GeneThera argues that the court must find a prima facie case of personal jurisdiction and venue before ordering jurisdictional discovery. (*Id.* at 10.)

## I. Reconsideration Standard

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration should only be granted when the movant identifies "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "A motion for reconsideration "is not a vehicle for relitigating old issues . . . or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## II. Subject Matter Jurisdiction

GeneThera seeks reconsideration of the court's conclusions on the issue of subject matter jurisdiction. On the issue of "who" decides the alter ego question, GeneThera argues:

> [N]one of the cases relied upon by Oeschger or the Court expressly or implicitly held that an alter ego issue must first be determined by a court in a case like this where an individual (Oeschger) is the very person who caused his alter ego (FOGT) to sign an arbitration agreement that incorporates the AAA rules granting an arbitrator the right to decide enforceability, jurisdiction, and arbitrability.

6

(Doc. 33 at 5.) As to standing, GeneThera asserts that only the contracting parties—FOGT and GeneThera—have standing to litigate the issue that Mr. Oeschger has raised. (*Id.* at 6–7.) That issue, according to GeneThera, is "about the enforceability of the MIA and its arbitration provision and the parties' rights and obligations under the MIA" in defense of GeneThera's claims that Mr. Oeschger is liable on an alter ego theory. (*Id.*)

Mr. Oeschger contends that GeneThera's arguments about subject matter jurisdiction "are just a rehash of the arguments the Court has previously rejected." (Doc. 39 at 3.) GeneThera replies that it seeks reconsideration on the issue of subject matter jurisdiction to correct "manifest error of law" and to prevent "manifest injustice." (Doc. 44 at 1.)

### A. No Clear Error of Law

#### 1. Who Decides

The court analyzed numerous cases to arrive at its conclusion that a court must decide whether a non-signatory resisting arbitration is subject to an arbitration provision. (Doc. 32 at 7–11.) GeneThera contends that the cases cited either involved different alter ego issues and no incorporation of the AAA rules or similar provision, or instead involved the same or similar AAA rules but no alter ego issues. (*See* Doc. 44 at 3.) GeneThera focuses on two of the cases that the court cited in its decision: *Charity Folks Inc. v. Kim*, 757 F. Supp. 2d 378 (S.D.N.Y. 2010), and *Local Union No. 38, Sheet Metal Workers International Association, AFL-CIO v. A&M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc.*, 314 F. Supp. 2d 332, 344 (S.D.N.Y. 2004).

*Charity Folks* is admittedly different than this case. Here, the non-signatory alleged alter ego is resisting arbitration, whereas in *Charity Folks* the non-signatory alleged alter ego sought to compel arbitration. But that difference was the basis for the *Charity Folks* court's ruling

7

distinguishing other cases holding "that the *alter ego* status of a non-signatory to an arbitration agreement is a question of arbitrability to be decided by the court rather than the arbitrator." *Charity Folks*, 757 F. Supp. 2d at 380. The *Charity Folks* court distinguished those cases because they involved situations where "the party contesting the motion to compel arbitration was the party alleged to have been an *alter ego*." *Id.* This court cited *Charity Folks* because the court in that case recognized the distinction that this court drew in its April 24, 2019 Order.

It is true that the opinion in *Local Union No. 38* does not recite the precise provisions of the relevant arbitration clause in that case. It is unclear whether the collective bargaining agreement in that case delegated issues of arbitrability to the arbitrator. But *Local Union No. 38* supports the court's conclusion "that a court should decide whether the arbitration contract bound parties who did not sign the agreement." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Indeed, the *Local Union No. 38* court stated that *Howsam* "clearly teaches that if the existence or binding effect of an agreement to arbitrate is in question, this is an issue to be decided by the court, not by an arbitrator." *Local Union No. 38*, 314 F. Supp. 2d at 344.

GeneThera also argues that the Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), suggests a different procedural pathway for resolving the alter ego question. The non-signatories in *First Options* requested that a district court vacate an arbitration award that the arbitrators issued after deciding that they had the power to rule on the merits of the parties' dispute. *Id.* at 941. But the *First Options* Court did not endorse any particular route to court; in fact, the Supreme Court noted that the non-signatories had other ways to get an independent court decision on the question of arbitrability. *Id.* at 946. *First Options* supports Mr. Oeschger's position for the reasons stated in the April 24, 2019 Order.

## 2. Standing

To support its argument that the court erroneously found Mr. Oeschger had standing to assert his declaratory judgment claims, GeneThera cites *East Meadows Co., LLC v. Greeley Irrigation Co.*, 66 P.3d 214 (Colo. App. 2003), and *Eaton Vance Management v. ForstmannLeff Associates, LLC*, No. 06 Civ. 1510(WHP), 2006 WL 2331009 (S.D.N.Y. Aug. 11, 2006). Both cases are consistent with this court's prior observation that "[g]enerally, nonparties to contracts lack standing to assert nonperformance of those contracts" (Doc. 32 at 12). *See Eaton Vance*, 2006 WL 2331009, at *6 ("Under New York law, unless a party has contractual privity or is a third-party beneficiary of a contract, it lacks standing to enforce the terms of the agreement." (footnote omitted)); *E. Meadows*, 66 P.3d at 217 ("The general rule is that one who is not a party to a contract, and from whom no consideration moved, has no connection therewith. He can avail himself of its terms neither as a cause of action nor a defense." (quoting *Cont'l Cas. Co. v. Carver*, 14 P.2d 181, 183 (Colo. 1932))).

Notwithstanding that general rule, the court reasoned that Mr. Oeschger's declaratory judgment claims do not assert nonperformance of the MIA, but instead seek a declaratory judgment that he has no liability under that agreement. (Doc. 32 at 12.) GeneThera insists that the declaratory judgment claims do concern "the enforceability of the MIA and its arbitration provision and the parties' rights and obligations under the MIA." (Doc. 33 at 6–7.) But as the court previously observed, the purpose of Mr. Oeschger's declaratory action is to state that there is no liability. (*See* Doc. 32 at 12.) That makes this case different.

GeneThera correctly quotes the *Eaton Vance* court's statement that "[p]arties who lack standing to enforce an agreement also lack standing to seek a declaration of rights under the contract." *Eaton Vance*, 2006 WL 2331009, at *6. But again, Mr. Oeschger's declaratory

9

judgment claims do not seek a declaration of rights *under the MIA*. Rather, he seeks a judgment declaring that he is *not bound by the MIA* in the first place. Mr. Oeschger has standing to seek that relief. *See Lehman Bros. Inc. v. Adkins*, No. 94 CIV. 6827 (DC), 1994 WL 637794, at *2 (S.D.N.Y. Nov. 14, 1994) (non-signatories to arbitration agreement had standing to seek judgment declaring they were not bound by agreement because "they will be injured if they are forced to litigate in an arbitral forum against their will").

### B. No Manifest Injustice

GeneThera argues that reconsideration is necessary to prevent manifest injustice, which it describes as "the death of a publicly traded company." (Doc. 44 at 3.) GeneThera asserts that, as a result of Mr. Oeschger's actions, it was "evicted from its laboratory space, is no longer SEC compliant, is no longer a viable business, and is now at serious risk of losing other investment opportunities." (*Id.* at 4.) Mr. Oeschger maintains that GeneThera cannot show manifest injustice because the court has ordered Mr. Oeschger to post a security bond. (Doc. 39 at 4 & n.1.)

After considering additional evidence from GeneThera, the court required Mr. Oeschger to post an $80,000 security bond under Fed. R. Civ. P. 65(c). (Doc. 37 at 1–4.) The court found that to be the proper sum in the event that GeneThera was wrongfully enjoined. GeneThera's legal memoranda paint a substantially more catastrophic picture, but the court could not conclude that a greater sum was proper. The court recognizes that the course of business moves quickly and that uncertainty looms as long as this litigation is ongoing. Since GeneThera has sought dismissal on multiple grounds, the best the court can do is to address the issues GeneThera has raised as expeditiously as possible. The court accordingly rejects GeneThera's contention that the preliminary injunctive relief is manifestly unjust.

10

## III. Remaining Issues

In addition to its arguments about subject matter jurisdiction, GeneThera's motion seeks "reconsideration" on the issues of personal jurisdiction, venue, and likelihood of success on the merits. (Doc. 33 at 7–12.) GeneThera also asserts that the court did not provide GeneThera an adequate opportunity to be heard before entering provisional injunctive relief. (*Id.* at 9.) Finally, GeneThera requests that the court enter an order clarifying or modifying the scope of the provisional injunction to allow GeneThera to move forward in the Colorado arbitration against FOGT. (Doc. 36 at 3; Doc. 44 at 6.)

In his opposition to the reconsideration motion, Mr. Oeschger maintains that the issues of personal jurisdiction, venue, and likelihood of success on the merits are not ripe for determination until after jurisdictional discovery is complete. (Doc. 39 at 4.) In reply, GeneThera writes that it understands the court's May 16, 2019 Order to include rulings on GeneThera's personal jurisdiction and notice reconsideration arguments, and that the only issue remaining for reconsideration is the court's ruling on subject matter jurisdiction. (Doc. 44 at 1 n.1.)

Regarding the remaining issues in GeneThera's reconsideration motion, the court's May 16, 2019 Order addressed only GeneThera's requests to modify the TRO to shorten its effective period and to require a security bond (denying the former and granting the latter). The court did not discuss GeneThera's personal jurisdiction and notice reconsideration arguments, and expressly stated that it was entering "no ruling at this time on the remaining issues presented in the Omnibus brief." (Doc. 37 at 5.) The court therefore proceeds to consider the remaining issues as necessary. Obviously the question of whether personal jurisdiction is present and related question of venue must await completion of jurisdictional discovery.

11

### A. Sufficient Showing for Jurisdictional Discovery

As this court has observed, "[w]hen courts authorize discovery to resolve a Rule 12(b)(2) motion, it is typically in cases where the plaintiff has made less than a *prima facie* showing, but has instead made a threshold showing that there is some basis for the assertion of jurisdiction or a sufficient start toward establishing jurisdiction." *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 5:16-cv-35, 2016 WL 7174646, at *6 (D. Vt. Dec. 7, 2016) (quoting *Gingras v. Rosette*, No. 5:15-cv-101, 2016 WL 4442792, at *2 (D. Vt. Aug. 22, 2016)). Here, the court has already ordered jurisdictional discovery. Although not explicitly stated in any of the court's prior orders in this case, the court ordered discovery because Mr. Oeschger has made a sufficient start toward establishing jurisdiction. "Courts do not permit jurisdictional discovery for the purpose of a 'fishing expedition.'" *Id.* (quoting *Cernansky v. Lefebvre*, 88 F. Supp. 3d 299, 309 (D. Vt. 2015)).

In particular, Mr. Oeschger has supplied, among other things, a declaration asserting that Jeffrey Diette contacted him about investing in GeneThera, that Mr. Diette was authorized to negotiate and accept terms on behalf of GeneThera, and that Mr. Diette knew or should have known that Mr. Oeschger's office and the office of his accountant Thomas Lauzon were both in Vermont. (*See* Doc. 20-4.) Mr. Oeschger also describes receiving a telephone call from GeneThera's chairman, Tony Milici. (*Id.* ¶ 11.) Mr. Lauzon has also supplied a declaration stating that Mr. Diette represented that he had authority to negotiate on behalf of GeneThera. (Doc. 20-17 ¶ 4.) The court found these materials to constitute a sufficient start toward establishing jurisdiction.

**B. Notice**

GeneThera argues that the court violated its due process rights by ordering preliminary injunctive relief without giving GeneThera a reasonable opportunity to be heard. (Doc. 33 at 9–10.) Mr. Oeschger maintains that GeneThera "intentionally precipitated the request by Plaintiff for a TRO" and that "with a motion for preliminary injunction pending, GeneThera has no basis for asserting lack of notice of the TRO." (Doc. 39 at 5.)

Rule 65's provisions on TROs include a requirement for expediting the preliminary-injunction hearing. Under the rule, if a TRO is issued without notice, "the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character." Fed. R. Civ. P. 65(b)(3). On the issue of notice, the TRO stated that "[s]ince counsel has appeared for GeneThera, Inc. in this action, notice of this Order to counsel shall constitute notice of this Order to GeneThera, Inc." (Doc. 16 at 2.) In any case, there would be no point in scheduling a hearing on personal jurisdiction or any merits issue until after jurisdictional discovery is complete. The court will set a hearing at the earliest possible time after the completion of that expedited discovery.

Meanwhile, the court rejects GeneThera's suggestion that the TRO should be dissolved on grounds of inadequate process. At the time the court issued the TRO on April 11, 2019, Mr. Oeschger was already seeking a preliminary injunction and the court had already held one hearing on April 9, 2019. Then, on April 10, 2019, the emergency arbitrator issued an order compelling Mr. Oeschger to arbitrate the claims against him and to make an immediate payment of $25,186.50 to GeneThera. Mr. Oeschger moved for the TRO that same day. (Doc. 14.) The court entered the TRO on April 11, 2019, finding that Mr. Oeschger would suffer irreparable

harm unless GeneThera was enjoined from enforcing the emergency arbitrator's order. (Doc. 16 at 2.)

Even though the court issued the TRO before GeneThera filed an opposition to the April 10, 2019 TRO motion, the question of "who decides" arbitrability issues was plainly before the court, and immediate action was necessary to prevent the irreparable harm that the court identified. Moreover, GeneThera took every opportunity to oppose the TRO, including by filing a motion to dissolve it on April 12, 2019. (Doc. 19.) GeneThera has had sufficient opportunities to make its arguments against the TRO. And the expedited jurisdictional discovery gives GeneThera sufficient time to "marshal [its] evidence and present [its] arguments" related to the question of personal jurisdiction. *Weitzman v. Stein*, 897 F.2d 653, 657 (2d Cir. 1990).

**C.     Merits Questions**

GeneThera insists that the court cannot enter any preliminary injunctive relief without finding that Mr. Oeschger has a reasonable probability of success on the merits of his claim that FOGT is not his alter ego. (Doc. 33 at 8.) Mr. Oeschger argues that this question will not be ripe until after the completion of jurisdictional discovery. (Doc. 39 at 4.) The court concludes that some discussion of this topic is warranted now.

"The factors considered in determining whether to issue a TRO are similar to those used in considering a motion for a preliminary injunction." *Tarlinsky v. Pompeo*, No. 3:19-CV-659 (VLB), 2019 WL 2231908, at *2 (D. Conn. May 23, 2019); *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO), 2015 WL 170442, at *10 (S.D.N.Y. Jan. 13, 2015) (considering same factor for both preliminary injunction and TRO); *see also* 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2951 (3d ed.) ("[T]he factors considered in ruling on a temporary restraining order mirror those on motions for a preliminary injunction and final

injunctive relief . . . ."). Irreparable harm is one essential factor. *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). As discussed above, the court has already expressly found that Mr. Oeschger has shown that he would be irreparably harmed absent the TRO.

But the court has not yet expressly stated anything about the second prong required for injunctive relief: whether Mr. Oeschger has shown "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts.*, 598 F.3d at 35 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). The "serious questions" standard permits a district court to grant provisional injunctive relief "in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.*

GeneThera has listed various assertions of fact in support of its contention that FOGT is Mr. Oeschger's alter ego. These assertions include, for example, evidence that Mr. Oeschger made the second milestone payment on behalf of "F. Oeschger" via a real estate company that he controls, as well as testimony from Mr. Lauzon about FOGT's structure, capitalization, and activities. (*See* Doc. 36.) GeneThera further points out that the AAA arbitrator found that GeneThera has a reasonable probability of success on the merits of the alter ego issue. (*See* Doc. 14-3 at 3.) The court is simultaneously mindful of Mr. Oeschger's assertion that he is reasonably likely to prevail on the alter ego issue, including his declaration about the formation of FOGT and his arguments about the provisions of 11 V.S.A. §§ 4042 and 4051(a). (*See* Doc. 4 at 6.) The court concludes that Mr. Oeschger has raised sufficiently serious questions going to

the merits of the alter ego issue, and that the balance of hardships tips decidedly in favor of preliminary relief, especially because of the harm that Mr. Oeschger would suffer if he were improperly forced to litigate in an arbitral forum. *See Lehman Bros.*, 1994 WL 637794, at *2.

**D.     GeneThera's Request to Modify or Clarify Scope of Provisional Injunction**

In its April 11, 2019 TRO, the court found that Mr. Oeschger would suffer "immediate, irreparable harm unless GeneThera, Inc. is enjoined from *any further prosecution of the Colorado arbitration* or enforcement of the [emergency arbitrator's April 10, 2019] Order [compelling him to arbitrate] until after this Court rules definitively on Plaintiff's Motion for Preliminary Injunction." (Doc. 16 at 2 (emphasis added).) The court enjoined GeneThera not only from enforcing the emergency arbitrator's April 10, 2019 order, but also "from taking any action in furtherance of the prosecution of the Arbitration." (*Id.*)

GeneThera states that Mr. Oeschger appears to be asserting in the Colorado arbitration that this court's provisional injunction enjoins the arbitration proceeding entirely—"even against FOGT for breach of contract and fraud and notwithstanding the Vermont Bankruptcy Court's order granting GeneThera relief from the automatic stay for the specific purpose of allowing GeneThera to proceed in the Colorado arbitration." (Doc. 36 at 3; *see also* Doc. 44 at 6.) GeneThera requests that the court clarify or modify the preliminary injunction to state that it does not enjoin GeneThera from proceeding in the Colorado arbitration against FOGT. (Doc. 36 at 3; Doc. 44 at 6.) GeneThera states that Mr. Oeschger has not addressed this issue and has "effectively conced[ed] that this Court has no jurisdiction to enjoin the Colorado arbitration from proceeding against FOGT." (Doc. 44 at 6.)

It is not entirely clear what conclusion the court should draw from Mr. Oeschger's silence on this issue. But the court's intent when it entered the TRO was to avoid the irreparable harm

that Mr. Oeschger would suffer if he were improperly forced to litigate in an arbitral forum. Insofar as the TRO might be construed to enjoin the arbitration against FOGT for breach of contract and fraud, the language of the TRO was too broad. The court will accordingly narrow the scope of the TRO. The court recognizes that arbitration between GeneThera and FOGT may proceed. The TRO is amended to reflect that it bars arbitration between GeneThera and Mr. Oeschger until the court has an opportunity to rule on the issues and defenses raised by both sides.

## Conclusion

GeneThera's Motion to Reconsider (Doc. 33) is GRANTED insofar as it seeks to modify the TRO to clarify that the TRO does not enjoin GeneThera from proceeding in the Colorado arbitration against FOGT. The Motion to Reconsider is otherwise DENIED.

Dated at Rutland, in the District of Vermont, this 18th day of June, 2019.

Geoffrey W. Crawford, Chief Judge
United States District Court